United States District Court
For the Northern District of California

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

DEDRICK RILEY,

                    Plaintiff,

        v.

THE CITY OF RICHMOND, et al.,

                    Defendants.

_____/

No. C-13-4752 MMC

**ORDER GRANTING DEFENDANTS' MOTION TO DISMISS, STAY AND/OR STRIKE PLEADINGS; AFFORDING PLAINTIFF FURTHER LEAVE TO AMEND**

        Before the Court is the "Motion to Dismiss Second Amended Complaint, Stay Proceedings, and/or Strike Pleadings," filed April 17, 2014 by defendants City of Richmond ("the City") and Chief of Police Christopher Magnus ("Chief Magnus").  Plaintiff Dedrick Riley has filed opposition, to which defendants have replied.  Having read and considered the papers filed in support of and in opposition to the motion, the Court rules as follows.[1]

**A.  Dismissal for Failure to State a Claim**

        In their motion, defendants argue that each of the six causes of action in the Second Amended Complaint ("SAC") are subject to dismissal for failure to state a claim.

        A dismissal for failure to state a claim can be based on the lack of a cognizable legal theory or the absence of sufficient facts alleged under a cognizable legal theory.  See Balistreri v. Pacifica Police Dep't, 901 F.2d 696, 699 (9th Cir. 1990).  Rule 8(a)(2), however, "requires only 'a short and plain statement of the claim showing that the pleader

_____

        [1]By order filed May 21, 2014, the Court took the matter under submission.

1  is entitled to relief.'"  See Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007) (quoting

2  Fed. R. Civ. P. 8(a)(2)).  Consequently, "a complaint attacked by a Rule 12(b)(6) motion to

3  dismiss does not need detailed factual allegations."  See id.  Nonetheless, "a plaintiff's

4  obligation to provide the grounds of his entitlement to relief requires more than labels and

5  conclusions, and a formulaic recitation of the elements of a cause of action will not do."

6  See id. (internal quotation, citation, and alteration omitted).

7       In analyzing a motion to dismiss, a district court must accept as true all material

8  allegations in the complaint, and construe them in the light most favorable to the

9  nonmoving party.  See NL Indus., Inc. v. Kaplan, 792 F.2d 896, 898 (9th Cir. 1986).  "To

10  survive a motion to dismiss, a complaint must contain sufficient factual material, accepted

11  as true, to 'state a claim to relief that is plausible on its face.'"  Ashcroft v. Iqbal, 556 U.S.

12  662, 678 (2009) (quoting Twombly, 550 U.S. at 570).  "Factual allegations must be enough

13  to raise a right to relief above the speculative level[.]"  Twombly, 550 U.S. at 555.  Courts

14  "are not bound to accept as true a legal conclusion couched as a factual allegation."  See

15  Iqbal, 556 U.S. at 678 (internal quotation and citation omitted).

16       **1.  First Cause of Action: Discrimination Based on Race in Violation of Title VII**

17       In the First Cause of Action, plaintiff, an African-American employed by the City as a

18  police officer, alleges that the City, in violation of Title VII, 42 U.S.C. § 2000e et seq.,

19  "discriminated against [him] in the terms and conditions of his employment" on "the basis of

20  his race."  (See SAC ¶ 66.)

21       A plaintiff states a prima facie Title VII disparate treatment claim by alleging "the

22  four factors set forth in McDonnell Douglas [Corp. v. Green, 411 U.S. 792 (1973)] are

23  present: (1) the plaintiff belongs to a class protected by Title VII[;] (2) the plaintiff applied

24  and was qualified for a job for which the employer was seeking applicants[;] (3) the plaintiff,

25  despite being qualified, was rejected[;] and (4) after the plaintiff's rejection, the position

26  remained open and the employer continued to seek applications from persons of

27  comparable qualifications."  See Yartzoff v. Thomas, 809 F.2d 1371, 1374-75 (9th Cir.

28  1987) (holding a plaintiff "fail[s] to state a claim" under Title VII, where the plaintiff does not

1   allege facts to support a prima facie case).

2       Plaintiff alleges that, in 2011, he was "placed in an administrative duty [position]," to

3   which he also refers as "desk duty."  (See SAC ¶¶ 43, 44.)[2]  Plaintiff further alleges that in

4   the time period at issue, "from July 28, 2012 to the present" (see SAC ¶ 15), he

5   unsuccessfully requested reassignment to other positions (see SAC ¶ 54 (identifying four

6   positions to which plaintiff sought reassignment on August 28, 2012), ¶ 58 (identifying two

7   positions to which plaintiff sought reassignment in June 2013; ¶ 61 (identifying three

8   positions to which plaintiff sought reassignment on September 23, 2013)).  According to

9   plaintiff, he could earn an additional "approximately $90,000" per year if he were

10  reassigned to one of those positions, and can seek promotions only if he is reassigned.

11  (See SAC ¶¶ 43, 44.)  Plaintiff further alleges that, on one occasion in December 2012, he

12  unsuccessfully requested an opportunity to work overtime (see SAC ¶ 55) and that, as of

13  September 23, 2013, he no longer was permitted to earn overtime by performing

14  "background checks" (see SAC ¶ 51).

15      Assuming the City was seeking applicants for the positions identified by plaintiff and

16  was seeking to provide employees with the opportunity to work overtime on the occasions

17  identified by plaintiff,[3] and further assuming plaintiff was qualified for each such position

18  and overtime opportunity,[4] plaintiff nonetheless fails to state a claim.  Specifically, plaintiff

19  fails to allege that, after his requests were denied, the City continued to accept applications

20  or requests for those positions and opportunities from persons of comparable

21  qualifications.  Cf. McDonnell Douglas, 411 U.S. at 802 (holding African-American plaintiff

22

23      [2]Defendants argue that any discrimination claim based on the 2011 assignment is
    barred by the applicable statute of limitations.  The Court does not address said argument
24  herein, as plaintiff has limited the scope of his discrimination claims, as well as his
    retaliation claims, to "claims [that] arose from July 28, 2012 to the present."  (See SAC
25  ¶ 15.)

26      [3]Plaintiff, without elaboration, refers to some of the positions he requested as being
    "open" (see SAC ¶ 54) or "vacant" (see SAC ¶ 61), and alleges that he "attempted to sign
27  up" to perform a task for which he would have earned overtime (see SAC ¶ 55).

28      [4]Defendants do not argue that plaintiff has failed to sufficiently allege he was
    qualified for the positions and overtime opportunities he sought.

established prima face case of discrimination, where he applied for position for which he was qualified and defendant continued to seek applications from others after it rejected his application); Fonseca v. Sysco Food Services, 374 F.3d 840, 843, 847 (9th Cir. 2004) (holding, for purposes of summary judgment, hispanic plaintiff sufficiently created triable issue of fact regarding discriminatory failure to receive overtime opportunities, where plaintiff submitted, inter alia, evidence to show "there were between ten and thirteen times when [plaintiff's] supervisor called at least one white employee to work overtime that should have been assigned to [plaintiff] because he had seniority").

Accordingly, the First Cause of Action is subject to dismissal.

**2. Second Cause of Action:  Harassment in Violation of Title VII**

In the Second Cause of Action, plaintiff alleges harassment in violation of Title VII, specifically, that he was subjected to "slurs, insults, jokes, or other verbal comments or intimidation of a racial nature" (see SAC ¶ 73) during the time period "from July 28, 2012 to the present" (see SAC ¶ 15).  Defendants argue plaintiff fails to sufficiently identify any harassing conduct occurring during the specified time period, and, moreover, that the legally cognizable time period is shorter than the time period alleged.

In that regard, both parties agree that a plaintiff must submit an administrative charge to the Equal Employment Opportunity Commission ("EEOC") within 300 days of the challenged employment practice.  (See SAC ¶ 15; Defs.' Mot. at 6:21-22.)  Because "[a] hostile work environment claim is composed of a series of separate acts that collectively constitute one unlawful employment practice," an administrative charge asserting such claim is timely so long as "an act contributing to the claim occurs within the [300 day] filing period."  See National Railroad Passenger Corp. v. Morgan, 536 U.S. 101, 117 (2002).  As set forth below, the parties disagree as to the date plaintiff exhausted his harassment claim and thus disagree as to the filing period applicable to plaintiff's harassment claim.

Plaintiff alleges he exhausted his harassment claim in an administrative charge submitted to the EEOC on May 24, 2013.  (See SAC ¶ 15.)  If plaintiff is correct, the filing period began 300 days prior to May 24, 2013, specifically, July 28, 2012, and ended May

4

24, 2013.  As defendants point out, however, plaintiff's May 24, 2013 charge neither

expressly refers to harassment nor otherwise alleges any facts suggesting harassment

occurred during the period July 28, 2012 to May 24, 2013.  (See Defs.' Req. for Judicial

Notice Ex. H.)[5]  Although "incidents of discrimination not included in an EEOC charge" may

be considered in a subsequent civil action where the "new claims are like or reasonably

related to the allegations contained in the EEOC charge," see Sosa v. Hiraoka, 920 F.2d

1451, 1456 (9th Cir. 1990) (internal quotation and citation omitted), the allegations

contained in the May 24, 2013 charge are not like or reasonably related to plaintiff's

harassment claim, as those allegations pertain only to three non-harassing, discrete acts,

specifically: his assignment to an "administrative position" in March 2012, the denial of

"overtime opportunities," and his placement on administrative leave from January 15, 2013

to April 9, 2013 (see Defs.' Req. for Judicial Notice Ex. H).

　　　　Plaintiff did exhaust his harassment claim in a later administrative charge (see Defs.'

Req. for Judicial Notice Ex. K), which charge plaintiff alleges he submitted to the EEOC on

February 12, 2014 (see SAC ¶ 15).  As noted, the claim alleged in the Second Cause of

Action is that plaintiff was subjected to harassment beginning on July 28, 2012 and

continuing to the present.  Consequently, the Second Cause of Action is timely only if "an

act contributing to the claim occur[red] within the filing period," see Morgan, 536 U.S. at

117, i.e., the period that began 300 days prior to February 12, 2014, specifically, April 18,

2013.[6]  The SAC, however, identifies no such act.  Moreover, to the extent the SAC does

---

[5]Defendants' request, unopposed by plaintiff, that the Court take judicial notice of the contents of plaintiff's administrative charge is hereby GRANTED.  The Court notes, however, that the charge appears to have been "Received" by the EEOC on June 6, 2013.

[6]Plaintiff argues his February 12, 2014 charge, which he denominates an "amended" charge (see Defs.' Req. for Judicial Notice Ex. K), relates back to May 24, 2013, the date he submitted his original charge.  An amended charge only "relate[s] back," however, when the newly alleged acts can be deemed "related to or growing out of the subject matter of the original charge."  See 29 C.F.R. § 1601.12(b).  Here, plaintiff's harassment claim does not relate back, as the original charge "contain[ed] no hint of" such claim, see Pejic v. Hughes Helicopters, Inc., 840 F.2d 667, 670-72, 675 (9th Cir. 1988) (holding amended EEOC charge alleging plaintiff was not promoted due to age discrimination did not relate back to date of original charge alleging plaintiff was not promoted due to national origin discrimination, where original charge "contain[ed] no hint of age discrimination").

1  identify dates on which allegedly harassing conduct occurred, all of those dates are prior to
2  April 18, 2013 (see SAC ¶¶ 19, 47), and, indeed, all are before July 28, 2012.

3          Accordingly, the Second Cause of Action is subject to dismissal.

4          **3.  Third Cause of Action: Retaliation in Violation of Title VII**

5          In the Third Cause of Action, plaintiff alleges that "[a]s a result of [his] complaining
6  about discrimination and harassment on the basis of race and filing two prior lawsuits
7  regarding such complaints," defendants violated Title VII by "retaliat[ing]" against him.  (See
8  SAC ¶ 83.)

9          To establish a prima facie case of retaliation under Title VII, the plaintiff must show
10 "(1) involvement in a protected activity, (2) an adverse employment action and (3) a causal
11 link between the two."  See Brooks v. City of San Mateo, 229 F.3d 917, 928 (9th Cir. 2000).

12         As set forth above with respect to the First Cause of Action, plaintiff alleges the City
13 denied his requests for reassignment and for overtime.  As noted above, however, plaintiff
14 fails to allege the City, after denying plaintiff's requests, continued to seek applications from
15 others for any such reassignment or overtime.  Nor does plaintiff allege any facts to
16 otherwise support a finding that plaintiff's requests were handled in a manner different from
17 that of other employees.  "Absent a showing of disparate treatment, [defendant's actions]
18 cannot be deemed retaliatory."  See id. at 928-29 (holding plaintiff could not base
19 retaliation claim on allegation defendant "used all of its allotted 90 days to process
20 [plaintiff's] worker's compensation claim," where plaintiff failed to show defendant "treated
21 her differently from other employees seeking worker's compensation benefits"); cf. Randlett
22 v. Shalala, 118 F.3d 857, 860, 862 (1st Cir. 1997) (holding plaintiff, who requested
23 reassignment to different work location in light of personal hardship, could base retaliation
24 claim on denial of said request, where plaintiff alleged "hardship transfers were routinely
25 granted to individuals with hardship requests similar to or less serious than [that of the
26 plaintiff]"); Iwekaogwu v. City of Los Angeles, 75 Cal. App. 4th 803, 810, 815 (2000)
27 (affirming judgment for plaintiff on retaliation claim, where plaintiff offered evidence to
28 establish that after he engaged in protected activity, "everyone in the section was approved

1    to do some overtime work except [plaintiff]").

2          Moreover, with respect to the December 2012 denial of plaintiff's request to work

3    overtime (see SAC ¶ 55) and the June 2013 denial of plaintiff's request for reassignment

4    (see SAC ¶ 58), plaintiff fails to allege sufficient facts to support a finding that a causal link

5    exists between said denials and plaintiff's protected activity, given that the latest alleged

6    protected activity occurring prior to those denials was in March 2012 (see SAC ¶ 53).  See

7    Manatt v. Bank of America, N.A., 339 F.3d 792, 803 (9th Cir. 2003) (holding nine-month

8    period between protected activity and adverse employment act insufficient to support

9    inference of causality).

10          Accordingly, the Third Cause of Action is subject to dismissal.

11          **4.  Fourth Cause of Action: Discrimination Based on Race (42 U.S.C.A. § 1981)**

12          In the Fourth Cause of Action, plaintiff alleges defendants, in violation of 42 U.S.C.

13    § 1981, deprived him of his rights under a contract governing his employment, on the basis

14    of plaintiff's race.  (See SAC ¶¶ 89, 96, 97.)

15          Given said claim is predicated on the same facts as those alleged in support of the

16    First Cause of Action, which alleges discrimination in violation of Title VII, and given that a

17    § 1981 discrimination claim is analyzed under the same test as is applicable to Title VII

18    discrimination claims, see Fonseca, 374 F.3d at 850, the Fourth Cause of Action is subject

19    to dismissal for the reasons stated above with respect to the First Cause of Action.

20          **5.  Fifth Cause of Action: Retaliation Based on Race (42 U.S.C.A. § 1981)**

21          In the Fifth Cause of Action, plaintiff alleges defendants, in violation of § 1981,

22    deprived him of his rights under a contract governing his employment, by retaliating against

23    him after he complained about racial harassment and discrimination.  (See SAC ¶¶ 103,

24    111.)

25          Given said claim is based on the same facts as those alleged in support of the Third

26    Cause of Action, which alleges retaliation in violation of Title VII, and given that a § 1981

27    retaliation claim is analyzed under the same test as is applicable to Title VII retaliation

28    claims, see Surrell v. California Water Service Co., 518 F.3d 1097, 1107-08 (9th Cir. 2008),

the Fifth Cause of Action is subject to dismissal for the reasons stated above with respect

to the Third Cause of Action.

### 6. Sixth Cause of Action: Deprivation of Rights Under Color of Law

In the Sixth Cause of Action, plaintiff alleges retaliatory and malicious prosecution in

violation of 42 U.S.C. § 1983.

In support of this claim, plaintiff alleges that although, on March 7, 2009, he and

Officer Anthony Diaz ("Officer Diaz") used "force" against an arrestee that was not

"excessive" (see SAC ¶ 38), Chief Magnus "directly solicited the District Attorney's office to

criminally prosecute [p]laintiff for assault and battery and other charges arising out of the

. . . March 7, 2009 incident" (see SAC ¶ 46), and "exerted pressure on the Deputy District

Attorney to pursue the prosecution as a personal political favor" (see SAC ¶ 124).

According to plaintiff, Chief Magnus did so due to "racial animus" and to retaliate for

plaintiff's having "[spoken] out about the [d]efendants' unlawful employment practices."

(See SAC ¶ 125).  Plaintiff further alleges that the District Attorney thereafter "brought the

charges" (see SAC ¶ 46), and that a jury acquitted him (see SAC ¶ 47).

Defendants argue plaintiff fails to state a claim because he does not allege sufficient

facts to support a finding that the District Attorney lacked probable cause to bring the

charges.  See Hartman v. Moore, 547 U.S. 250, 252 (2006) (holding "want of probable

cause must be alleged" to state claim for retaliatory prosecution); Freeman v. City of Santa

Ana, 68 F.3d 1180, 1189 (9th Cir. 1995) (holding claim of malicious prosecution requires

showing plaintiff was "prosecuted without probable cause").

The SAC includes conclusory allegations that probable cause was lacking,

specifically, that (1) the "Deputy District Attorney assigned to investigate the charges

advised Chief Magnus, prior to the prosecution, that the evidence supporting the charges

against [p]laintiff was either demonstrably false or grossly unreliable" and, "[a]s a result,"

that "the case was lacking in probable cause" (see SAC ¶ 124), and (2) an "Internal Affairs

investigator who[ ] recommended the criminal charges to the District Attorney . . . admitted

to [plaintiff] that he did not see grounds for prosecution" (see SAC ¶ 120).

1      "While legal conclusions," either by a plaintiff or by others, "can provide the

2  framework of a complaint, they must be supported by factual allegations," see Iqbal, 556

3  U.S. at 679, sufficient to "plausibly suggest an entitlement to relief," see id. at 681.  Here,

4  as discussed below, the SAC does not include factual allegations sufficient to "nudge[ ] his

5  claims . . . across the line from conceivable to plausible."  See id. at 680 (internal quotation,

6  alteration, and citation omitted).

7      First, plaintiff alleges that a "Sgt. Mitch Peixoto ["Sgt. Peixoto"] advised [plaintiff] that

8  he was asked to lie to the Deputy District Attorney handling the matter and to say that

9  Officer Diaz had been 30-40 feet away when the altercation with the suspect occurred."

10  (See SAC ¶ 121.)  Plaintiff fails, however, to allege that Sgt. Peixoto actually made any

11  such untrue statement to the Deputy District Attorney.  Moreover, assuming Sgt. Peixoto

12  did make such a statement, plaintiff fails to allege facts suggesting how the statement

13  would be material to a determination as to whether or not plaintiff himself committed an

14  assault or battery.  See Smith v. Almada, 640 F.3d 931, 937-38 (9th Cir. 2011) (holding

15  plaintiff failed to establish malicious prosecution claim, where assertedly false information

16  provided by defendant to prosecutor was "not material to the finding of probable cause"); cf.

17  Galbraith v. County of Santa Clara, 307 F.3d 1119, 1126-27 (9th Cir. 2002) (holding plaintiff

18  charged with murder stated claim for malicious prosecution, where plaintiff identified false

19  statements made by defendant coroner in autopsy report, specifically, that decedent had

20  been strangled rather than committed suicide; noting such statements "play[ed] a material

21  role" in prosecutor's decision to file criminal charges against plaintiff).

22      Second, plaintiff, apparently referring to Chief Magnus, alleges that "[d]efendants

23  . . . promised not to prosecute or severely discipline Officer Diaz in exchange for his proffer

24  of false testimony to help justify the . . . prosecution of [p]laintiff," and that Officer Diaz

25  "complied and proffered the solicited false testimony."  (See SAC ¶ 122.)  Plaintiff fails,

26  however, to set forth the "false testimony" he alleges was given, and, consequently, does

27  not allege facts to support a finding that such testimony was material to a determination as

28  to whether plaintiff committed an assault or battery.

1   Third, plaintiff alleges that the "suspect," i.e., the asserted victim of the assault/

2   battery, was interviewed by "the District Attorney's own investigator," who concluded "the

3   suspect was lying about [p]laintiff's use of force."  (See SAC ¶ 123.)  Other than by stating

4   the "suspect" lied "about" the use of force, plaintiff provides no allegation as to the content

5   of any such false statement, and, consequently, fails to allege facts to support a finding that

6   whatever the individual said "about" the use of force was material to a determination as to

7   whether plaintiff committed an assault or battery.

8   Accordingly, the Sixth Cause of Action is subject to dismissal.

9   **7.  Leave to Amend**

10   In his opposition, plaintiff requests leave to amend in the event the SAC is

11   dismissed.

12   By order filed March 18, 2014, the Court dismissed the First Amended Complaint for

13   failure to state a claim, and afforded plaintiff leave to amend to cure the deficiencies

14   identified by that order.  As plaintiff has partially cured those deficiencies, e.g., by

15   identifying the acts within the relevant time frame on which he bases his racial

16   discrimination and retaliation claims, and affording plaintiff an opportunity to amend to cure

17   the deficiencies identified herein does not necessarily appear to be futile, the Court will

18   afford plaintiff a further opportunity to amend.

19   **B.  Stay and/or Strike Pleadings**

20   Because each of plaintiff's six causes of action is subject to dismissal, the Court

21   does not address herein defendants' alternative arguments that the instant action should be

22   stayed in favor of a pending action filed by plaintiff in state court, and that certain portions

23   of the SAC should be stricken.

24   //

25   //

26   //

27   //

28   //

1

**CONCLUSION**

2          For the reasons stated above, defendants' motion is hereby GRANTED, and the

3   Second Amended Complaint is hereby DISMISSED, with leave to amend.

4          Any Third Amended Complaint shall be filed no later than July 3, 2014.   In any such

5   Third Amended Complaint, plaintiff may amend to cure the deficiencies noted above but

6   may not add new causes of action or new defendants without first obtaining leave of court.

7   See Fed. R. Civ. P. 15(a)(2).

8          **IT IS SO ORDERED.**

9

10  Dated:  June 16, 2014

11                                                                    MAXINE M. CHESNEY
                                                                      United States District Judge

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

11