IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DEDRICK RILEY, | No. C-13-4752 MMC |
| Plaintiff, | **ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION TO DISMISS, STAY AND/OR STRIKE PLEADINGS** |
| v. | |
| THE CITY OF RICHMOND, et al., | |
| Defendants. | |

Before the Court is the "Motion to Dismiss Third Amended Complaint, Stay Proceedings, and/or Strike Pleadings," filed July 14, 2014 by defendants City of Richmond ("the City") and Chief of Police Christopher Magnus ("Chief Magnus"). Plaintiff Dedrick Riley has filed opposition, to which defendants have replied. Having read and considered the papers filed in support of and in opposition to the motion, the Court rules as follows.[1]

## BACKGROUND

In the operative complaint, the Third Amended Complaint ("TAC"), plaintiff, who is employed by the City as a police officer, alleges his requests for transfer and for reassignment from his present position have been denied, and that said denials were on account of his race, African-American, and in retaliation for his having engaged in protected activity. Additionally, plaintiff alleges defendants maliciously caused a criminal proceeding to be instituted against him.

---

[1] By order filed August 20, 2014, the Court took the matter under submission.

**DISCUSSION**

Defendants contend plaintiff's claims are subject to dismissal for failure to state a claim, that the claims should be dismissed or stayed under the doctrine set forth in Colorado River Water Conservation District v. United States, 424 U.S. 800 (1976), and that certain allegations in the TAC should be stricken.

**A. Stay Under Colorado River Doctrine**

The Court previously dismissed plaintiff's Second Amended Complaint, for failure to allege sufficient facts to provide fair notice as to the positions and opportunities on which the claims alleged therein were based. In the TAC, plaintiff has added allegations to clarify the factual basis for each of his claims, and, in light thereof, the Court finds it appropriate to address at the outset defendants' argument that plaintiff's claims should be stayed under Colorado River.[2]

"Under Colorado River, considerations of wise judicial administration, giving regard to conservation of judicial resources and comprehensive disposition of litigation, may justify a decision by the district court to stay federal proceedings pending the resolution of concurrent state court proceedings involving the same matter." Holder v. Holder, 305 F.3d 854, 867 (9th Cir. 2002) (internal quotation and citation omitted). District courts consider "eight factors for assessing the appropriateness of a Colorado River stay," specifically, "(1) which court first assumed jurisdiction over any property at stake; (2) the inconvenience of the federal forum; (3) the desire to avoid piecemeal litigation; (4) the order in which the forums obtained jurisdiction; (5) whether federal law or state law provides the rule of decision on the merits; (6) whether the state court proceedings can adequately protect the rights of the federal litigants; (7) the desire to avoid forum shopping; and (8) whether the state court proceedings will resolve all issues before the federal court." See R&R Street & Co. v. Transport Ins. Co., 656 F.3d 966, 978-79 (9th Cir. 2011).

---

[2] As noted, defendants move, in the alternative, for a dismissal or a stay. District courts, however, "must stay, rather than dismiss, an action when they determine that they should defer to the state court proceedings under Colorado River." See Coopers & Lybrand v. Sun-Diamond Growers, 912 F.2d 1135, 1138 (9th Cir. 1990).

Where appropriate, a "partial stay is permissible under <u>Colorado River</u>," i.e., a district court may stay some of the plaintiff's claims, while continuing to adjudicate others. <u>See</u>, e.g., <u>Krieger v. Atheros Communications, Inc.</u>, 776 F. Supp. 2d 1053, 1060-61 (N.D. Cal. 2011) (holding "partial stay under <u>Colorado River</u> may be appropriate in cases where some, but not all, of a federal plaintiff's claims are pending in a parallel state action"; staying claims "virtually identical" to claims pending in state proceeding, while declining to stay claim within exclusive jurisdiction of federal court); <u>In re Countrywide Financial Corp. Derivative Litig.</u>, 542 F. Supp. 2d 1160, 1170-74 (C.D. Cal. 2008) (staying "merger related" class claims under <u>Colorado River</u>, in light of state court proceeding in which "substantially similar" class claims were being litigated; proceeding with shareholder derivative claims, which were not brought in state court proceeding).

**1. Employment Discrimination and Retaliation Claims**

In the TAC, plaintiff alleges that "[t]hroughout 2012 and 2013, [p]laintiff has repeatedly requested or applied for transfers and better assignments within the police department" and that each such request has been denied. (<u>See</u> TAC ¶ 50.) In his First and Third Causes of Action, plaintiff alleges said denials constituted discrimination on the basis of race in violation of, respectively, Title VII (<u>see</u> TAC ¶ 66) and 42 U.S.C. § 1981 (<u>see</u> TAC ¶ 80). In his Second and Fourth Causes of Action, plaintiff alleges said denials were in retaliation for plaintiff's having complained about racial discrimination and harassment in violation of, respectively, Title VII (<u>see</u> TAC ¶ 74) and § 1981 (<u>see</u> TAC ¶ 94). The First and Third Causes of Action are alleged against the City only, and the Second and Fourth Causes of Action are alleged against both the City and Chief Magnus.

As defendants point out, plaintiff has filed in state court an action titled <u>Riley v. City of Richmond</u>, Case No. 10-02843 (<u>see</u> Defs.' Req. for Judicial Notice, filed July 14, 2014, Ex. B),[3] which action is presently pending. In the operative complaint filed therein, the First Amended Complaint, plaintiff alleges, as he does in the instant action, that "[t]hroughout

---

[3]Defendants' unopposed request that the Court take judicial notice of the initial and amended complaints filed by plaintiff in state court is hereby GRANTED.

2012 and 2013, [p]laintiff has repeatedly applied for transfers and better assignments within the police department" and that each such request has been denied (see id. Ex. C ¶ 27). In the state court action, plaintiff alleges said denials constituted discrimination on the basis of race, in violation of the Fair Employment and Housing Act ("FEHA") (see id. Ex. C ¶ 30), and were in retaliation for plaintiff's having complained about racial discrimination and harassment, in violation of FEHA (see id. Ex. C ¶¶ 40-41). The FEHA claims are alleged against the City only.

In sum, the only differences between the two pending actions are that plaintiff seeks relief under federal law here and under state law in the state court, and plaintiff has named Chief Magnus as a defendant solely in his federal action.

### a. Application of Factors

Defendants argue that the Colorado River factors weigh in favor of staying plaintiff's employment claims. The Court considers the factors, in turn.

#### (1) Whether the State Court First Assumed Jurisdiction Over Property

The first factor is "irrelevant in this case because the dispute does not involve a specific piece of property." See R&R Street, 656 F.3d at 979.

#### (2) Inconvenience of the Federal Forum

The second factor is "irrelevant in this case because . . . both the federal and state forums are located in [the same geographic area]." See id.

#### (3) Desirability of Avoiding Piecemeal Litigation

The third factor weighs in favor of a stay. "Piecemeal litigation occurs when different tribunals consider the same issue, thereby duplicating efforts and possibly reaching different results." American Int'l Underwriters (Philippines), Inc. v. Continental Ins. Co., 843 F.2d 1253, 1258 (9th Cir. 1988). Here, as discussed above, plaintiff seeks to litigate the exact same issue in both cases, specifically, whether the City's denial of plaintiff's requests for transfers and other assignments, during 2012 and 2013, was on account of racial discrimination and/or in retaliation for plaintiff's complaints about racial discrimination and

harassment.

### (4) Order in Which Jurisdiction was First Obtained by the Concurrent Forums

The fourth factor, as plaintiff concedes, weighs in favor of a stay, given that the state court action has advanced beyond the pleading stage and the parties are presently conducting discovery on plaintiff's claims (see Pl.s' Opp. at 11:11-14), whereas the instant federal action has not, to date, advanced beyond the pleading stage, see Moses H. Cone Memorial Hospital v. Mercury Constr. Corp., 460 U.S. 1, 21 (1983) (holding fourth factor is "measured . . . in terms of how much progress has been made in the two actions").

### (5) Whether Federal Law or State Law Provides the Rule of Decision on the Merits

The fifth factor weighs against a stay, given plaintiff's claims arise under federal law, but is not of substantial weight, as state courts have "concurrent jurisdiction" over Title VII and § 1981 claims, and, consequently, may resolve such claims as well. See Nakash v. Marciano, 882 F.2d 1411, 1416 (9th Cir. 1989) (finding fourth factor "less significant," where federal plaintiff sought relief under RICO, given state courts' concurrent jurisdiction over RICO claims); Yellow Freight System, Inc. v. Donnelly, 494 U.S. 820, 826 (1990) (holding state courts have concurrent jurisdiction over Title VII claims); DeHorney v. Bank of America Nat'l Trust & Savings Ass'n, 879 F.2d 459, 463 (9th Cir. 1989) (holding state courts have concurrent jurisdiction over § 1981 claims). Moreover, the fifth factor is less significant for an additional reason, namely, that federal and state law on the merits of plaintiff's claims is, as discussed below with reference to the eighth factor, essentially the same.

### (6) Whether the State Court Proceedings are Inadequate to Protect the Federal Litigant's Rights

This factor weighs in favor of a stay. Although a stay may be inappropriate where the state court "cannot adequately protect the rights of the federal litigants," such as where there is "a possibility that the parties will not be able to raise their claims in the state proceeding," see R&R Street, 656 F.3d at 981, here, no such circumstance has been

shown. Indeed, plaintiff is already proceeding with his FEHA claims based on the same facts as those on which he bases his federal employment claims, which claims, as noted, are analyzed in the same manner as a FEHA claim. See Clark v. Lacy, 376 F.3d 682, 688 (7th Cir. 2004) (holding sixth factor weighed in favor of stay; noting "there is no fear that [plaintiff's] rights will not be adequately protected in the state proceeding as the same questions of law and fact are presented as in the federal case and the state court can resolve those questions just as effectively"). Further, should plaintiff wish to proceed in state court with his Title VII or § 1981 claims, he can request the state court invoke its concurrent jurisdiction over those claims. See, e.g., Silvaco Data Systems, Inc. v. Technology Modeling Associates, Inc., 896 F. Supp. 973, 977 (N.D. Cal. 1995) (staying under Colorado River plaintiff's Lanham Act false advertising claim, where Lanham Act claim was based on same facts alleged in state complaint in support of state law unfair competition claim; observing, with respect to sixth factor, "[plaintiff] can invoke the state court's concurrent jurisdiction over the Lanham Act claims . . . if it so wishes").

### (7)  Whether Exercising Jurisdiction Would Promote Forum Shopping

This factor weighs slightly in favor of a stay. Although the record does not indicate plaintiff filed his federal action to avoid a ruling issued by the state court or in reaction to a perceived difficulty with proceeding in state court, see, e.g., American Int'l Underwriters, 843 F.2d at 1256, 1259 (holding plaintiff engaged in forum shopping when it filed duplicative action in federal court "to avoid . . . evidentiary obstacles" it faced in state court under "arcane" state rule of evidence), plaintiff nonetheless could have brought, in a single forum, all of his claims that arise from employment decisions made in 2012 and 2013, cf. Holder, 305 F.3d at 871 (finding seventh factor weighed against stay, where federal claim brought under Hague Convention; noting plaintiff "probably had to bring his [federal] claim in federal court" while proceeding with state law claims in state court).

### (8)  Whether the State Court Proceedings Will Resolve All Issues Before the Federal Court

The eighth factor weighs in favor of a stay. As discussed above, plaintiff alleges, in

the operative complaints pending in both forums, that his failure to receive transfers and assignments for which he applied throughout 2012 and 2013 was due to racial discrimination and retaliation for prior complaints about racial discrimination and harassment.  Resolution of plaintiff's state law discrimination and retaliation claims will resolve plaintiff's discrimination and retaliation claims brought under federal law, for the reason that the state court's finding on the issues of discrimination and retaliation by the City, acting through Chief Magnus and other employees, will have a preclusive effect in the instant action.  See Kremer v. Chemical Constr. Corp., 456 U.S. 461, 466-67, 479-80, 485 (1982) (holding federal courts considering federal discrimination claims required to give preclusive effect to state court judgments on state law discrimination claims, where state and federal actions are based on same asserted adverse employment acts and elements of state and federal claims are "virtually identical"); Fonseca v. Cysco Food Services, 374 F.3d 840, 850 (9th Cir. 2004) (holding "[a]nalysis of an employment discrimination claim under § 1981 follows the same legal principles as those applicable in a Title VII disparate treatment case"); Tarin v. County of Los Angeles, 123 F.3d 1259, 1263 n.2 (9th Cir. 1997) (holding "test for determining whether there is discrimination under Title VII applies to FEHA claims as well"); Flait v. North American Watch Corp., 3 Cal. App. 4th 467 (1992) (holding FEHA retaliation claims "are evaluated under federal law interpreting Title VII cases"); Lelaind v. City and County of San Francisco, 576 F. Supp. 2d 1079, 1094 (N.D. 2008) (holding claims for retaliation under FEHA, Title VII, and § 1981 are analyzed under same "framework").

### b. Conclusion as to Employment Discrimination/Retaliation Claims

As discussed above, all applicable factors, with one exception of limited significance, weigh in favor of a stay.

Accordingly, to the extent defendants seek a stay of the First through Fourth Causes of Action, the motion will be granted.

//

//

### 2. Malicious Prosecution Claim

In the Fifth Cause of Action in the TAC, plaintiff alleges that, on March 7, 2009, he and Officer Anthony Diaz ("Officer Diaz") encountered a "suspect" to whom "force was applied" in a manner that "did not in any way violate department protocols" and that was not "excessive." (See TAC ¶ 36). Plaintiff alleges Chief Magnus nonetheless "directly solicited the District Attorney's office to criminally prosecute [p]laintiff for assault and battery and other charges arising out of the . . . March 7, 2009 incident" (see TAC ¶ 44), and "exerted pressure on [a] Deputy District Attorney to pursue the prosecution as a personal political favor" (see TAC ¶ 116). According to plaintiff, Chief Magnus did so due to "racial animus" and to retaliate for plaintiff's having "[spoken] out about the [d]efendants' unlawful employment practices." (See TAC ¶ 118). Plaintiff further alleges the District Attorney ultimately "capitulated" and "brought the charges" (see TAC ¶ 44), but that he subsequently was acquitted (see TAC ¶ 45). Based on said allegations, plaintiff alleges defendants violated 42 U.S.C. § 1983, by subjecting him to a "malicious prosecution," in violation of his right to "equal protection . . . insofar as it was motivated by [d]efendants' racial animus" and in violation of his "First Amendment right to speak out about [d]efendants' unlawful employment practices." (See TAC 29:11, ¶ 118.)

In the state court action, plaintiff does not allege a claim for malicious prosecution, either under state or federal law. Defendants argue the malicious prosecution claim nonetheless will be resolved when the state employment claims are resolved, thus satisfying the eighth Colorado River factor. The Court is not persuaded.

Although, as defendants note, the operative state court complaint refers to the criminal prosecution, plaintiff's allegation therein is that after he was acquitted in March 2012, Chief Magnus relied on said "failed and malicious prosecution . . . as a further pretext to justify denying equal employment opportunities." (See Defs.' Req. for Judicial Notice Ex. C ¶ 22.) In other words, plaintiff alleges in the state court proceeding that Chief Magnus's asserted lawful reason for denying plaintiff the positions he sought in 2012 and 2013 was, in actuality, a prosecution Chief Magnus knew to be baseless. Plaintiff does

8

1 not, however, allege in the state court proceedings that Chief Magnus, or anyone else on
2 behalf of the City, took any step to cause the criminal proceedings to be filed.  An essential
3 element of a § 1983 malicious prosecution claim is the defendant's "induc[ing] the
4 prosecutor to bring the charges that would not have been initiated without his urging."  See
5 Hartman v. Moore, 547 U.S. 250, 262 (2006).  Under such circumstances, there exists a
6 "substantial doubt" that the state court proceedings will resolve the § 1983 claim, and,
7 consequently, a stay of the § 1983 claim is inappropriate.  See Moses H. Cone, 460 U.S. at
8 28 (holding if there is "any substantial doubt" that the state court proceedings will resolve
9 claim alleged in federal complaint, it would be "serious abuse of discretion to grant [a]
10 stay"); Holder, 305 F.3d at 870, 873 (vacating order staying action under Colorado River;
11 holding where "there is substantial doubt that a final determination in the [state action] will
12 resolve all of the issues in the [federal action]," federal action cannot be stayed).
13     Accordingly, to the extent defendants seek an order staying the § 1983 claim, the
14 motion will be denied.
15 **B.  Dismissal for Failure to State a Claim**
16     A dismissal for failure to state a claim can be based on the lack of a cognizable legal
17 theory or the absence of sufficient facts alleged under a cognizable legal theory.  See
18 Balistreri v. Pacifica Police Dep't, 901 F.2d 696, 699 (9th Cir. 1990).  Rule 8(a)(2),
19 however, "requires only 'a short and plain statement of the claim showing that the pleader
20 is entitled to relief.'"  See Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007) (quoting
21 Fed. R. Civ. P. 8(a)(2)).  Consequently, "a complaint attacked by a Rule 12(b)(6) motion to
22 dismiss does not need detailed factual allegations."  See id.  Nonetheless, "a plaintiff's
23 obligation to provide the grounds of his entitlement to relief requires more than labels and
24 conclusions, and a formulaic recitation of the elements of a cause of action will not do."
25 See id. (internal quotation, citation, and alteration omitted).
26     In analyzing a motion to dismiss, a district court must accept as true all material
27 allegations in the complaint, and construe them in the light most favorable to the
28 nonmoving party.  See NL Indus., Inc. v. Kaplan, 792 F.2d 896, 898 (9th Cir. 1986).  "To

survive a motion to dismiss, a complaint must contain sufficient factual material, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Twombly, 550 U.S. at 570). "Factual allegations must be enough to raise a right to relief above the speculative level[.]" Twombly, 550 U.S. at 555. Courts "are not bound to accept as true a legal conclusion couched as a factual allegation." See Iqbal, 556 U.S. at 678 (internal quotation and citation omitted).

### 1. Fifth Cause of Action

In the Fifth Cause of Action, plaintiff, as noted, alleges malicious prosecution in violation of 42 U.S.C. § 1983. Defendants argue said claim is subject to dismissal on a number of grounds, none of which arguments the Court, as discussed below, finds persuasive.

First, defendants argue, plaintiff has failed to allege facts to support a finding that the District Attorney lacked probable cause to bring the charges. See Hartman, 547 U.S. at 252 (holding "want of probable cause must be alleged" to state claim for retaliatory prosecution); Freeman v. City of Santa Ana, 68 F.3d 1180, 1189 (9th Cir. 1995) (holding claim of malicious prosecution requires showing plaintiff was "prosecuted without probable cause"). Contrary to defendants' argument, however, plaintiff has sufficiently alleged a lack of probable cause. Specifically, plaintiff alleges that the asserted victim of excessive force initially told a police lieutenant that Officer Diaz used force that caused him physical injury, but that Chief Magnus and a Deputy District Attorney thereafter "coached" said individual to "change[ ] his testimony," and to instead claim that it was plaintiff who had exerted the force that caused such injury and that Officer Diaz had never touched him (see TAC ¶ 117); plaintiff further alleges that the Deputy District Attorney then "relied" on such "false testimony" as the "justification" for the prosecution (see id.).

Second, defendants argue, plaintiff has failed to allege facts to support a finding that defendants were "motivated by a discriminatory purpose" and that "similarly situated individuals" were not prosecuted. (See Defs.' Mot. at 16:13-21 (citing Lacey v. Mariposa County, 649 F.3d 1118 (9th Cir. 2011)); see also Lacey, 649 F.3d at 1133-34 (listing

10

1  elements of § 1983 malicious prosecution claim).  Contrary to defendant's argument,
2  plaintiff has alleged that Chief Magnus was motivated by racial animus and by an intent to
3  retaliate for plaintiff's prior protected activity (see TAC ¶¶ 35, 47, 64, 118); additionally,
4  plaintiff has identified a similarly situated individual, Officer Diaz, who, plaintiff alleges, was
5  not prosecuted "or even disciplined" and who "exerted the exact same type and level of
6  force on the suspect during the arrest" (see TAC ¶ 112).

7  Defendants next argue they are entitled to immunity under § 821.6 of the California
8  Government Code, which statute provides, in relevant part, that "[a] public employee is not
9  liable for injury caused by his instituting or prosecuting any judicial or administrative
10 proceeding within the scope of his employment, even if he acts maliciously and without
11 probable cause."  See Cal. Gov't Code § 821.6.  Immunities created by state law, however,
12 are inapplicable to claims under § 1983.  See Martinez v. California, 444 U.S. 277, 283-84
13 and n.8 (1979) (finding "California immunity statute" provided no defense to § 1983 claim;
14 holding "[c]onduct by persons acting under color of state law which is wrongful under 42
15 U.S.C. § 1983 . . . cannot be immunized by state law") (internal citation and quotation
16 omitted).

17 Lastly, defendants contend plaintiff fails to state a § 1983 claim against the City,
18 because, according to defendants, plaintiff has not sufficiently identified a municipal policy
19 and has not sufficiently alleged how any such policy was the cause of the asserted
20 deprivation of his federal rights.  Plaintiff's allegation, however, that Chief Magnus had
21 "final policymaking authority from [the City] with regard to recommending cases for
22 prosecution to the Contra Costa County District Attorney's Office" (see TAC ¶ 119) is
23 sufficient to plead both elements.  First, from the allegations in the TAC, one can infer a
24 policy of shifting the blame to African-American officers and retaliating against officers who
25 file complaints of discrimination.  See City of St. Louis v. Praprotnik, 485 U.S. 112, 123
26 (1988) (holding unconstitutional policy can "be inferred from a single decision taken by the
27 highest official[ ] responsible for setting policy in that area of the government's business");
28 see also Christie v. Iopa, 176 F.3d 1231, 1235–36 (9th Cir. 1999) (holding "municipality

11

can be liable for an isolated constitutional violation when the person causing the violation has final policymaking authority"); Shaw v. California Dep't of Alcoholic Beverage Control, 788 F.2d 600, 611 (9th Cir. 1986) (holding "policies set by . . . Chief [of Police] may be fairly said to represent official City policy on police matters") (internal quotation, alteration and citation omitted).  Second, plaintiff alleges that Chief Magnus was the person who "solicited the criminal prosecution of [p]laintiff" (see TAC ¶ 119), based on his "racial animus" (see TAC ¶ 118) and in "retaliation" for plaintiff's protected activity (see TAC ¶ 120), thus sufficiently alleging causation.  See Harper v. City of Los Angeles, 533 F.3d 1010, 1026 (9th Cir. 2008) (holding establishing causation in claim for municipality's liability "straightforward" where unconstitutional action was taken by municipality's "authorized decisionmaker").

Accordingly, defendants have not shown the Fifth Cause of Action is subject to dismissal.

**2. Conspiracy Claim**

Although not pleaded as a separate cause of action, plaintiff alleges that "[d]efendants, and each of them, . . . knowingly and willfully conspired to do the acts and things herein alleged pursuant to, and in furtherance of, [a] conspiracy."  (See FAC ¶ 5.)  Defendants argue plaintiff has not, and cannot, plead any facts that could support a conspiracy claim.  The Court agrees.

The sole "defendant" named in the TAC other than Chief Magnus is the City, a municipality that can only act through its individual employees.  As plaintiff does not assert his substantive claims against any individual other than Chief Magnus, there is no basis for a conspiracy allegation.  Indeed, any such allegation would be, in effect, an allegation that Chief Magnus conspired with himself.

Accordingly, the conspiracy claim will be dismissed without leave to amend.

//
//
//

**C. Striking of Allegations**

Defendants argue that certain allegations in the TAC are immaterial and/or scandalous, and, consequently, should be stricken pursuant to Rule 12(f). In response, plaintiff argues that each allegation challenged by defendants is relevant to the issues of whether defendants instituted the criminal proceedings without probable cause and/or whether defendants acted with a discriminatory or retaliatory state of mind. The Court considers the challenged allegations in turn, both as they may pertain to the Fifth Cause of Action and also to the stayed causes of action, given the possibility that the stayed claims may proceed here at a later date. See Coopers & Lybrand, 912 F.2d at 1138 (explaining stay under Colorado River "ensure[s] that the federal forum will remain open if for some unexpected reason the state forum does turn out to be inadequate") (internal quotation and citation omitted).

Defendants first argue the Court should strike references to the parties' having settled a prior employment discrimination complaint filed by plaintiff in 2006, and, in particular, any reference to the reasons why the City settled said prior action. (See TAC ¶ 39.) Defendants argue such allegations are immaterial, as evidence to support them would be inadmissible under Rule 408 of the Federal Rules of Civil Procedure. The Court agrees, given plaintiff's assertion that said allegations are relevant as to issues of liability. See Fed. R. Evid. 408(a) (providing evidence of "furnishing . . . consideration in compromising . . . [a] claim" and "conduct or a statement during compromise negotiations about the claim" are inadmissible to prove liability).

Defendants next argue allegations contained in ¶¶ 20-34, ¶ 48, and portions of ¶ 64 of the TAC should be stricken. The challenged portions describe, according to the TAC, "instances of the racially harassing conduct which [p]laintiff experienced, witnessed, or otherwise learned of through other 'me too' discriminatees." (See TAC ¶ 20.) In particular, the challenged portions set forth either assertedly discriminatory conduct by Chief Magnus toward African-American police officers, but not conduct as to which plaintiff seeks relief herein (see, e.g., TAC ¶ 32), or assertedly discriminatory conduct by others that was

brought to Chief Magnus' attention, and upon which he assertedly failed to act (see, e.g., TAC ¶¶ 22-27).  Although such allegations may, on a more developed record, be shown to be inadmissible at trial, see, e.g., Fed. R. Evid. 403, the Court declines to find at this early stage of the proceedings that the prior alleged acts of discrimination by Chief Magnus, or his alleged acquiescence in discrimination by others, are categorically irrelevant to plaintiff's claims.  See Wailua Assocs. v. Aetna Casualty & Surety Co., 183 F.R.D. 550, 553–54 (D. Haw. 1998) (holding allegation should not be stricken "unless it is clear that it can have no possible bearing upon the subject matter of the litigation"; further holding motion to strike should be denied "if there is any doubt as to whether under any contingency the [challenged] matter may raise an issue") (internal quotation and citation omitted); see also Johnson v. United Cerebral Palsy/Spastic Children's Foundation, 173 Cal. App. 4th 740, 759, 763-67 (2009) (holding, where plaintiff alleged she was terminated on account of pregnancy, evidence that other employees were subjected to discrimination "after they became pregnant" admissible to establish "why defendant fired plaintiff"; citing federal employment discrimination cases finding admissible, under particular circumstances, evidence defendant discriminated against other employees).

Accordingly, with the exception of the references in ¶ 39 to the parties' settlement of a prior complaint, the motion to strike will be denied.

**CONCLUSION**

For the reasons stated above, defendants' motion to dismiss, stay, or strike is hereby GRANTED in part and DENIED in part as follows:

1. To the extent the motion seeks an order staying the First through Fourth Causes of Action, the motion is hereby GRANTED.

2. To the extent the motion seeks an order dismissing the conspiracy claim set forth in ¶ 5, the motion is hereby GRANTED, and said claim is DISMISSED without leave to amend.

3. To the extent the motion seeks an order striking from ¶ 39 of the TAC references to the parties' settlement of plaintiff's prior complaint, the motion is hereby GRANTED.

4.  In all other respects, the motion is hereby DENIED.

**IT IS SO ORDERED.**

Dated:  October 9, 2014

_____
MAXINE M. CHESNEY
United States District Judge