**EXHIBIT F TO MALONEY DEC**

C. CHRISTINE MALONEY (State Bar No. 226575)
JILL A. SPRAGUE (State Bar No. 201584)
FOSTER EMPLOYMENT LAW
3000 Lakeshore Avenue
Oakland, California 94610
Telephone: (510) 763-1900
Facsimile: (510) 763-5952
cmaloney@fosteremploymentlaw.com

Attorneys for Defendant
CITY OF RICHMOND

SUPERIOR COURT OF THE STATE OF CALIFORNIA

COUNTY OF CONTRA COSTA

| | |
|---|---|
| DEDRICK RILEY,<br><br>　　　　Plaintiff,<br><br>vs.<br><br>CITY OF RICHMOND; AND DOES 1-50, INCLUSIVE,<br><br>　　　　Defendants. | Case No. C10-02843<br><br>DECLARATION OF MITCH PEIXOTO IN SUPPORT OF DEFENDANT'S MOTION FOR SUMMARY JUDGMENT OR SUMMARY ADJUDICATION<br><br>Date:<br>Time:<br>Judge:　Hon. Jill Fannin<br>Dept:　　21<br>Complaint Filed: 9/28/10<br>Trial Date:　　9/8/15 |

MITCH PEIXOTO DECLARES:

1.　I am employed as a police officer with the City of Richmond. Between approximately January 2009 and March 2009, I was Officer Riley's sergeant. I have personal knowledge of the following facts and am competent to testify about them.

2.　When I began supervising Officer Riley's patrol team in January 2009, I distributed a document with my supervisory expectations during a daily briefing. Among my other expectations, I stated that officers were expected to notify me when "any" amount of force was used. A true and correct copy of this handout is attached as Exhibit 1.

1

3. On March 7, 2009, I gradually learned of an incident in which Officer Riley applied physical force to a suspect named Donald Stewart. Within two days of the incident, I prepared a written outline of the events as they emerged from my vantage point. I supplied this outline to internal affairs. A true and correct copy is attached as Exhibit 2. The content of that outline is remains an accurate depiction of the events as I learned them.

4. Under the Department's Reporting Use of Force Policy in effect at the time, employees were required to "immediately notify a Supervisor" when the officer "uses physical force of any kind to overcome resistance of a suspect whether or not an injury results." Section 310.3(d). A true and correct copy of this policy is attached as Exhibit 3. The policy further provides that a Supervisor who is notified of use of force shall investigate the circumstances surrounding the use of force and submit a Supervisor's Report of Use of Force prior to the end of the shift. Section 310.4.

5. With regard to the March 7, 2009 incident involving Officer Riley, he did not "immediately" report the force he used on Donald Stewart to me. Officer Riley should have called me to the scene so I could interview eye witnesses, document any injuries or the lack thereof, and ensure medical attention if it was required or requested, and otherwise be able to discharge my duty of investigation and reporting. Officer Riley did call me twice after he left the scene to inquire if he could release his suspect on a small drug possession, Mr. Stewart, and turn him into a confidential informant and to learn how to complete the process. As noted in my outline, Officer Riley failed to mention to me in either phone conversation that he applied any force to his suspect in the arrest. I would not have approved a PC 849(b) release by phone if I had known force had been used. I would need to ensure that the suspect was not being released for an improper reason, such as concealing a wrongful application of force.

6. At another incident scene that night, after Mr. Stewart was released and gone, Officer Riley approached me and told me that he completed a Use of Force form and put it on my desk. I had to ask what incident he was talking about. He stated, "I had to slap that guy around who wants to snitch now." I explained two things to Officer Riley. First, he should have immediately reported the use of force to me and called me to the scene. Second, he should not be completing the

2

DECLARATION OF MITCH PEIXOTO IN SUPPORT OF MSJ                    CASE NO. C10-02843

Supervisor's Use of Force form. That was my job after conducting a review of the circumstances. Officer Riley advised that he would complete the incident/arrest report and list all the force used during the arrest.

7. A short time later, I returned to the police department and informed my supervisor, watch commander Lt. Johan Simon, of my conversation with Officer Riley and the Supervisor's Use of Force form Riley which filled out and left on my desk.

8. Approximately a day or two later, I was asked to provide a summary of the events of March 7th and I was interviewed by IA.

I declare under the penalty of perjury of the laws of the State of California that the foregoing is true and correct.

Executed this 29TH day of May, 2015, at Richmond, California.

_____
Mitch Peixoto

# EXHIBIT 1

 

# TEAM SERGEANT EXPECTATIONS 2009
### Patrol Services Bureau - Team 7
### Sergeant M. Peixoto

## AS YOUR TEAM SERGEANT, I EXPECT...

- You to be professional in all situations. As long as your decisions are ethical, moral and legal, I will back you 100%.
- You to report to roll call on time, with all necessary equipment and ready to start work.
- You to participate and contribute during briefing and team training.
- You are to assume your assignment directly after briefing. You should make me aware of any *necessary* delays prior to lingering.
- You to establish goals for your beat. You are to meet departmental and team production levels in all levels. Strive to achieve high productivity whenever possible.
- You to submit reports and projects on a timely basis, and for you to conduct thorough investigations and follow up for all criminal cases. You to follow departmental investigative standards.
- You to handle your beat and assist each other without complaint.
- You to handle all assigned tasks. If a question arises about whether a task is your responsibility, discuss it with me and do not argue with dispatcher.
- You to make me aware of your activities and discuss with me any problems (personal or work related) that has potential of affecting your ability to do your job. Discuss with me individual or mutual concerns at the time they surface.
- You to use professional radio procedure on all channels.
- You to be responsible for your safety and the safety of others. ***Officer safety must be considered of the utmost priority.***
- Learn and or keep current with the characteristics of your area, residents, and businesses.
- Identify area problems and create effective strategies and tactics in dealing with these problems.
- Communicate with me about the nature of your area and its problems.
- You are to complete and submit a daily activity log by the end of shift to your team sergeant.

## AS YOUR TEAM SERGEANT, I WILL...

- Never ask of you what I do not expect from myself.
- Provide direction and leadership for those officers under my command.
- Attempt to identify and provide for your training needs.
- Implement regular team training.
- Assist you in career development.
- Maximize my time in the field. I will respond to all major incidents and respond to your location in the field if you need my assistance.

Skelly 084

# TEAM 7

## (General Information)

- **VACATION**

    Desk Calendar
    Calendar in Team 7 Book

- **FORCED O.T.**

    Log will be in Team 7 Book

- **Jail Run**

    Log will be in Team 7 Book

- **Ride Alongs**

    Log will be in Team 7 Book

- **Acting Sgt. Time**

    Log will be in Team 7 Book

- **Seat Belts**

    The WILL be worn – **NO EXCUSES!**

- **Vehicle Crashes**

Richmond Police Department RECEIVED MAR 09 2009 Internal Affairs Richmond, California

- **Reports**

    When in doubt – write a report. If there is no crime, then author a misc. crime report. No one has ever received discipline for writing a report.

- **Use of Force**

    Notify me when ANY use of force is used – when force is used the SUSPECT goes to jail.

- **Vehicle Pursuits**

    I like "chasers" but if you want to chase a vehicle then put out all the needed information on the radio – crime, direction, speed, traffic conditions, number of persons inside SUSPECT vehicle – the more information the better!

- **Daily Logs**

    I will have a tray for your daily log reports – when filling out the log, please highlight or put asterisk on any event where an arrest was made, a gun was recovered and / or dope was seized or any event you think is significant.

- **Beat Responsibility**

    Beat Integrity is a must

    If your Beat Sgt. wants you to blog....then use the Beat Blog

Richmond Police Department RECEIVED MAR 09 2009 Internal Affairs Richmond, CA

Skelly 086

- **Vehicle Stops**

    Stopping vehicles during the tour of duty is a MUST! I understand not everyone enjoys going to traffic court on their days off, so I don't expect you to issue a citation to everyone you stop. BUT, when I am doing the stats, no citations issued for an entire month is NOT acceptable.

Richmond Police Department RECEIVED MAR 09 2009 Internal Affairs Richmond,

Skelly 087

# EXHIBIT 2

#4

# OUTLINE OF EVENTS
# 07 MARCH 2009



- During line-up, Officer A. Diaz needed to ride with someone because his PTO (CANTRELL) was off on training and K9 competition. Since Officer D. Riley recently requested to be assigned as a PTO, I decided to let Officer Diaz ride with Officer Riley.

- On 07 MARCH 2009, at approx. 2121 hours, I received a telephone call from Officer Riley on my mobile telephone. This conversation last 2 minutes and 22 seconds. Officer Riley was reporting that he made a narcotic related arrest and the SUSPECT wanted to work as a Confidential Informant (CI). I explained to Officer Riley that SID was in the process of writing a policy for signing up CI'S so we could 849 PC the SUSPECT, but he would have to be signed up by SID. Officer Riley also said that the SUSPECT could assist with information on Southern District drug houses.

- On 07 MARCH 2009, at approx. 2128 hours, I received a telephone call from Officer Riley on my mobile telephone. This conversation lasted 20 seconds. Officer Riley asked me if he should 849 the SUSPECT or book the SUSPECT. I told Officer Riley to book and then 849.

- During a detail at Carlson Blvd. and Cutting Blvd., Officer Riley informed me that he put a Use of Force Form on my desk. When I inquired on why he would fill out a Use of Force Form he stated, "I had to slap that guy around who wants to snitch now." Upon my further questioning of Officer Riley, I found out that during the arrest, Officer Riley had to use force. I explained to Officer Riley that he did not handle this situation properly and explained on how he should have handled the situation. Officer Riley advised he would complete the report listing all the force he used during the arrest.

- It should be noted that Officer Diaz was present and knew that Officer Riley was informing me of the arrest and use of force used.

Skelly 079

# EXHIBIT 3

# Reporting Use of Force

### 310.1     PURPOSE & SCOPE
The purpose of this order is to set forth policy and procedures for reporting incidents involving the use of force.

### 310.2     REPORT OF WEAPON DISCHARGE
Any employee who discharges his or her weapon accidentally or intentionally, on or off duty, except during training or recreational use (as outlined in § 302.14), shall notify the Watch Commander as soon as possible.

### 310.3     REPORTING REQUIREMENTS – LESS THAN LETHAL FORCE
Employees shall immediately notify a Supervisor when:

(a)   Oleoresin Capsicum (OC) has been used on a person.

(b)   A carotid restraint hold has been applied, whether or not injury results.

(c)   When the TASER gun is utilized intentionally, or unintentionally, whether or not injury results.

(d)   Baton, flexible baton, round or other instrument has been used whether or not any injury results.

(e)   An Officer uses physical force of any kind to overcome the resistance of a suspect whether or not injury results.

(f)   A person requires medical treatment of any kind or expresses a complaint of pain regarding injury.

### 310.31     REQUIRED REPORTS
Any reported use of force by a member of this Department shall be documented in an appropriate report, depending on the nature of the incident (e.g., arrest report, incident report). The use of particular weapons, such as chemical agents, may also require the completion of additional forms as required by Department policy and/or law.

### 310.32     DEFINITION OF REPORTABLE FORCE
A reportable use of force is defined as any incident in which an on-duty Department employee or off-duty employee, whose occupation is a factor, uses a control device or any physical force to:

(a)   Compel a person to comply with the employee's directions; or,

(b)   To prevent escape or overcome resistance by a suspect during an arrest or a detention; or,

(c)   Defend any person from an aggressive action by a suspect.

(d) Exceptions:

1. The use of a firm grip control only, that does not result in injury or the appearance of injury (e.g., the use of a grip to control the suspect's hands while searching or handcuffing); or,

2. The force necessary to overcome passive resistance due to physical disability or intoxication that does not result in injury or the appearance of injury (e.g., lift an intoxicated person to a standing position); or,

3. An incident investigation through the Contra Costa County Critical Incident Protocol.

## 310.4   INVESTIGATION PROCEDURES

The Supervisor who is so notified shall investigate the circumstances surrounding the use of force and submit a Supervisor's Report of Use of Force form (RPD 15/5) through channels to the Chief of Police prior to the end of the shift. The report shall not contain opinions concerning the justifiable or non-justifiable nature of the use of force. The Supervisor shall attach copies of pertinent police reports concerning the incident.

## 310.5   NOTIFICATIONS

In addition to notifying a Supervisor, employees who use any of the levels of force described in § 310.3 shall, in a police report appropriate to the incident, describe the force used.

Supervisory notification shall be made as soon as possible following the application of any physical force. Upon notification of the use of force, the Supervisor shall take the appropriate supervisory actions, to include the completion of the Use of Force form (RPD 15/5). This report shall be routed to the Office of the Chief of Police via the chain of command.

## 310.6   FOLLOW-UP PROCEDURES – USE OF FORCE

(a) Copies of Use of Force Reports submitted by Supervisors shall be received and processed by Internal Affairs Division with copies routed to the Chair of the Force Review Committee, the Officer in Charge of the Firearms Training Cadre, the Officer in Charge of the Defensive Tactics Cadre, and the Department's Training Manager. Those entities shall review them for trends regarding equipment and techniques and make appropriate recommendations, where necessary, through the chain of command to the Chief of Police.

(b) The Chief of Police will direct the follow-up action, if any to be taken, on a Supervisor's Report of Use of Force (RPD 15/5). Such action may include but is not limited to:

1. Convening the Major Incident Board of Review.
2. Referral to the Force Review Committee to address policy, equipment, training issues.
3. Referral for further investigation
4. Pertinent notification to Commanders and Supervisors.

RICHMOND POLICE DEPARTMENT

---

(c) The Internal Affairs Division Commander shall conduct an annual (calendar year) analysis of the Use of Force forms to reveal patterns or trends that could indicate training needs, equipment needs, and/or policy modifications. The analysis shall be documented in a written report and forwarded to the Chief of Police by January 31st of each year.